UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ZHI YONG ZHENG, individually, and
on behalf of all others similarly situated,

                                  Plaintiff,

                 -against-

NANATORI JAPANESE RESTAURANT
CORP., MING LAN LIU and
JOHN DOES #1-10,

                            Defendants.
-------------------------------------------------------X

REPORT AND
RECOMMENDATION

15 CV 1222 (RJD)(RML)

LEVY, United States Magistrate Judge:

        Plaintiff Zhi Yong Zheng ("plaintiff" or "Zheng") commenced this putative collective action[1] against defendants Nanatori Japanese Restaurant Corporation ("Nanatori" or the "Restaurant"), the Restaurant's principal, Ming Lan Liu ("Liu"), and John Does #1-10 (collectively, "defendants"), on March 9, 2015, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, et seq., the New York Labor Law (the "NYLL"), N.Y. LAB. LAW §§ 190 and 650-665, et seq., and the minimum wage, overtime, and spread-of-hours

---

[1] The Fair Labor Standards Act authorizes an aggrieved employee to maintain a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). A putative plaintiff must affirmatively "opt into" a § 216(b) action by filing his or her written consent with the court in which the original action was brought. See id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). In the instant case, no such potential plaintiffs have affirmatively opted into Zheng's collective action by filing written consent with the court. Thus, only Zheng will be bound by or may benefit from a judgment in this case. See, e.g., Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010) ("Unlike in traditional 'class actions' maintainable pursuant to Federal Rule of Civil Procedure 23, plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment.") (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir. 2001)).

law and associated regulations of the New York Commissioner, codified in the New York Codes, Rules, and Regulations ("NYCRR"), N.Y. COMP. CODES R. & REGS. tit. 12, §§ 137 and 146, et seq. (Complaint, dated Mar. 4, 2015 ("Compl."), Dkt. No. 1.) Plaintiff now moves for partial summary judgment as to liability. (See Notice of Motion for Partial Summary Judgment, dated May 26, 2016, Dkt. No. 20.)

By order dated August 19, 2016, the Honorable Raymond J. Dearie, United States District Judge, referred plaintiff's motion to me for a report and recommendation. (Order, dated Aug. 19, 2016.) After granting two adjournment requests, I heard oral argument on November 17, 2016. (See Transcript of Oral Argument, dated Nov. 17, 2016 ("Tr."), Dkt. No. 29.) For the reasons stated below, I respectfully recommend that plaintiff's motion be granted in part and denied in part.

## BACKGROUND AND FACTS[2]

Defendant Nanatori is a New York corporation with its principal place of business in Brooklyn, New York. (Plaintiff's Rule 56.1 Statement, dated May 26, 2016 ("Pl.'s 56.1 Stmt."), Dkt. No. 22., ¶ 1; Defendants' Rule 56.1 Statement, dated Jul. 15, 2016 ("Defs.' 56.1 Stmt."), Dkt. No. 26, ¶ 1.) Defendant Liu is the owner and principal of Nanatori, and has served

---

[2] The following facts, upon which plaintiff's complaint is based, are undisputed or deemed admitted, unless otherwise noted. Plaintiff has served and filed a Statement of Material Facts, in compliance with Local Civil Rule 56.1(a). The rule states that upon any motion for summary judgment, "there shall be annexed to the notice of motion a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Rule 56.1(b) then requires any party opposing summary judgment to include "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Under Rule 56.1(c), all "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless specifically controverted by. . . the statement required to be served by the opposing party." See AAI Recoveries, Inc. v. Pijuan, 13 F. Supp. 2d 448, 449–50 (S.D.N.Y. 1998); Montalvo v. Sun Roc Corp., 179 F.R.D. 420, 421–23 (S.D.N.Y. 1998); see also T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009).

in this capacity since September 2009.  (Pl.'s 56.1 Stmt. ¶¶ 4-5; Defs.' 56.1 Stmt. ¶¶ 4-5.)  As the Restaurant's owner, Liu is the sole party responsible for making all business decisions for Nanatori, including hiring and firing employees, as well as setting wages and work schedules and maintaining the Restaurant's records.  (Pl.'s 56.1 Stmt. ¶¶ 6-7; Defs.' 56.1 Stmt. ¶¶ 6-7.)

Plaintiff is a former employee of Nanatori.  (Pl.'s 56.1 Stmt. ¶ 10; Defs.' 56.1 Stmt. ¶ 10.)  Plaintiff began working as a delivery person at the Restaurant in or about August 2008 and remained employed there until January 2014.  (Pl.'s 56.1 Stmt. ¶¶ 11-12; Defs.' 56.1 Stmt. 11-12.)  When defendant Liu assumed ownership of the Restaurant in 2009, she did not investigate the legal requirements for compensating employees, and she had "never heard of the Fair Labor Standards Act" or New York Labor Law, "or any laws governing employee pay."  (Pl.'s 56.1 Stmt. ¶¶ 29-32; Defs.' 56.1 Stmt. ¶¶ 29-32.)  Plaintiff alleges that he was paid no more than $5.00 per hour throughout the course of his employment; defendants claim that plaintiff received tips in addition to his wages.  (Pl.'s 56.1 Stmt. ¶ 15; Defs.' 56.1 Stmt. ¶ 15.)  Both sides agree, however, that Liu set plaintiff's pay at $5.00 per hour.  (Pl.'s 56.1 ¶ 16; Defs.' 56.1 Stmt. ¶ 16.)  Plaintiff admits that he received tips when he made deliveries and was aware that he would receive tips, and defendants admit that plaintiff was not asked to report information about his tips to the Restaurant, and that no one from Nanatori ever explained the "tip credit" to him or provided him with any information regarding the Restaurant's tip policies.  (Pl.'s 56.1 Stmt. ¶¶ 21, 23; Defs.' 56.1 Stmt. ¶¶ 21, 23-25.)

According to plaintiff, during his employment, he was required to work six days per week, between ten and twelve hours per day, for a total of sixty-nine and a half hours per week.  (Pl. 56.1 Stmt. ¶¶ 18-19; <u>but see</u> Defs.' 56.1 Stmt. ¶¶ 17-18.)  While defendants maintain that plaintiff was scheduled to work Monday to Friday for eight hours a day, they admit that he

3

"may have worked six days a week on occasion" and that he "did not receive overtime premium pay when he worked more than 40 hours in a week." (Defs.' 56.1 Stmt. ¶¶ 17-19.) Moreover, it is undisputed that defendants did not provide a time clock, sign-in sheet, or other mechanical means for employees to track their time worked, and when plaintiff was paid, defendants provided false paystubs that did not match his actual rate of pay or the tips he received. (Pl.'s 56.1 Stmt. ¶¶ 13, 22; Defs.' 56.1 Stmt. ¶¶ 13, 22.) Finally, both sides acknowledge that plaintiff never received a notice from the Restaurant describing the parameters of his pay as required by the Wage Theft Prevention Act, and he was never asked to sign such a notice. (Pl.'s 56.1 Stmt. ¶ 28; Defs.' 56.1 Stmt. ¶ 28.)

Plaintiff further claims that he never received a spread-of-hours premium on days when he worked shifts lasting longer than ten hours from start to finish and that defendant Liu was only occasionally present at the Restaurant when plaintiff arrived and left for the day. (Pl.'s 56.1 Stmt. ¶¶ 26, 20.) In response, defendants argue that plaintiff did not work shifts lasting longer than ten hours a day, and, even though defendant Liu was unaware of the spread-of-hours law, plaintiff received additional hourly compensation when he worked overtime. (Defs.' 56.1 Stmt. ¶ 26.) Defendants also contest plaintiff's assertion that Liu was only at the Restaurant on occasion, contending that while Liu was not always present when plaintiff was at work, she remembered his schedule and kept track of his hours in a notebook she carried with her. (Id. ¶¶ 20, 14.)

On May 26, 2016, plaintiff filed a motion for partial summary judgment as to defendants' liability on his claims for unpaid minimum and overtime wages, spread-of-hours

damages, violations of the Wage Theft Prevention Act, and liquidated damages.[3] (See Motion for Partial Summary Judgment, dated May 26, 2016, Dkt. No. 20; Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, dated May 26, 2016 ("Pl.'s Mem."), Dkt. No. 23.) Plaintiff does not seek summary judgment on the amount of damages, but only as to issues of liability that will structure further proceedings.

## DISCUSSION

1. Summary Judgment Standard

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The function of the district court in considering the motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried." Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir. 1988) (citation omitted). It is well-settled that "[o]n a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but

---

[3] "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages" for violations of the FLSA's minimum wage and overtime provisions. Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)). However, a district court has "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." Id. (quoting 29 U.S.C. § 260). "The employer bears the burden of proving good faith and reasonableness, [and] the burden is a difficult one, with double damages being the norm and single damages the exception." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999). Like the FLSA, the NYLL provides for liquidated damages in addition to actual damages under some circumstances. See N.Y. LAB. LAW §§ 198(1–a), 663(1). The New York legislature has amended the liquidated damages provision twice in recent years, both times making it easier for employees to claim liquidated damages. See Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 10 n.8, 968 N.E.2d 947 (N.Y. 2012). Defendants do not concede dual liability for liquidated damages under the FLSA and NYLL. Whether plaintiff is entitled to liquidated damages under both state and federal law presents a mixed issue of law and fact, to be determined at a later date.

5

only to determine whether there are issues to be tried." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) (citations omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, there is sufficient evidence favoring the non-movant such that a reasonable jury could return a verdict in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where that burden is carried, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. (citing Anderson, 477 U.S. at 249). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted). With these standards in mind, I will address plaintiff's summary judgment motion as to defendants' liability.

2. Liability under the FLSA and NYLL

To be held liable under the FLSA, a person must be an "employer," which includes "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing Falk v. Brennan, 414 U.S. 190, 195 (1973)). "Accordingly, the Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'"

6

Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 138 (2d Cir. 2008) (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)).

Thus, in deciding whether an individual is an employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . with an eye to the 'economic reality' presented by the facts of each case."[4] Herman, 172 F.3d at 139 (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). Under this "economic reality" test, "the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. (quoting Carter, 735 F.2d at 12). Since the test is not "confined to a narrow legalistic definition," no one of these factors is dispositive. Id. Rather, "economic reality is determined based upon all the circumstances." Id.

There is evidence in the record to support all four of the "economic reality" factors with respect to defendant Liu. First, it is undisputed that Liu is responsible for making all business decisions for Nanatori and has the power to hire and fire employees at the Restaurant. (Pl.'s 56.1 Stmt. ¶¶ 6-7; Defs.' 56.1 Stmt. ¶¶ 6-7.) It is also undisputed that Liu supervised plaintiff's work schedule as well as the conditions of his employment. (Id.) Furthermore, Liu determined the rate and method of payment to plaintiff. (Pl.'s 56.1 Stmt. ¶¶ 16-17; Defs.' 56.1

---

[4] "[C]ourts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 (S.D.N.Y. 2011) (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007)); see also Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) ("The 'economic reality' test will be used to determine whether Lee is Yang's 'employer' as defined under both state and federal law, as there is general support for giving FLSA and the New York Labor Law consistent interpretations." (internal quotation marks and alterations omitted)). Therefore, the same standards apply to plaintiff's state law claims with respect to liability under the NYLL.

Stmt. ¶¶ 16-17.) In addition, Liu testified that she is the only person at the Restaurant who has the authority to set employee wages and schedules, maintain employee records, and hire and fire employees. (Deposition Transcript of Ming Lan Liu, dated Dec. 14, 2015 ("Liu Dep"), annexed as Exhibit C to Declaration of David Stein, Esq., dated May 26, 2016 ("Stein Decl."), Dkt. No. 21, at 18:13-18, 19:20-21.) Finally, the record indicates that Liu maintained employee records. (Pl.'s 56.1 Stmt. ¶ 7; Defs.' 56.1 Stmt. ¶¶ 7, 14.) Indeed, both sides admit that she had the power to "maintain employee records," (id.), and Liu testified that she remembered plaintiff's schedule and kept track of his hours by keeping them in a notebook that she carried with her. (Liu Dep. at 47:24, 50:4-16.)

Looking to the totality of the circumstances and the broad scope in which the FLSA is to be analyzed, it is clear that Liu owned, financially controlled, and exercised significant functional control over the general business affairs of the Restaurant, and controlled plaintiff's wages, schedule, and conditions of employment. In sum, there is no dispute that defendants Nanatori and Liu were plaintiff's employers within the meaning of the FLSA and the NYLL. Accordingly, I recommend that defendants Nanatori and Liu be held jointly and severally liable for any judgment resulting from plaintiff's claims. See Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128–29 (E.D.N.Y. 2011) (holding allegations that individual had authority over personnel and payroll decisions and authority to hire and fire employees adequate to impose joint and several liability); Ting Yao Lin v. Hayashi Ya II, Inc., No. 08 CV 6071, 2009 WL 289653, at *1 (S.D.N.Y. Jan. 30, 2009), report and recommendation adopted sub nom., Yao Lin v. Hayashi Ya II, Inc., 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009) (imposing joint and several liability pursuant to both FLSA and NYLL).

3. Minimum Wage

Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage. See 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R. § 146–1.3(b) (effective Jan. 1, 2011); Shahriar v. Smith & Wollensky Rest. Grp., 659 F.3d 234, 239–40 (2d Cir. 2011). This allowance against the minimum cash wage is known as a "tip credit." To be eligible for the FLSA tip credit, however, the employer must first notify the employees of its intention to include tip income when calculating wages actually paid for minimum wages purposes. Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010) (citation omitted). Similarly, an employer may receive the benefit of the tip credit under the NYLL only if the employer gives proper notice. Id. In this case, it is undisputed that plaintiff was paid less than the statutory minimum wage. (Pl.'s 56.1 Stmt. ¶ 15; Defs.' 56.1 Stmt. ¶ 15.) Although defendants state that plaintiff received tips, they do not argue that they are entitled to take advantage of the tip credit under the FLSA or NYLL; indeed, defendants admit that they did not comply with the prerequisites of the tip credit. (Defs.' 56.1 Stmt. ¶¶ 21, 22, 24, 25, 27.) Therefore, defendants violated the minimum wage provisions of the FLSA and the NYLL.

4. Overtime Wages

Plaintiff contends that defendants failed to pay the proper minimum wage for his overtime hours. Both the FLSA and regulations issued pursuant to the NYLL require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146–1.4 (effective Jan. 1, 2011); 12 N.Y.C.R.R. § 137–1.3 (repealed effective Jan. 1, 2011).

In its response to plaintiff's request for admissions, defendant Nanatori admitted that, during the course of plaintiff's employment with the Restaurant, "there were weeks when he worked in excess of forty hours" and that plaintiff was not paid overtime for any such overtime hours worked.  (Defendant Nanatori's Responses to Requests for Admission, dated Dec. 3, 2015, annexed as Ex. B to Stein Decl., ¶¶ 11-13.)  At oral argument, defendants conceded that there were some overtime hours for which plaintiff was not appropriately compensated.  (Tr. at 13:12-13:14.)  Therefore, plaintiff has established that defendants violated the overtime provisions of the FLSA and the NYLL.

5. WTPA

Effective April 9, 2011, the NYLL requires that "every employer shall provide their employees, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer a notice containing information about rates of pay." N.Y. LAB. LAW § 195(1)(a).[5]  Plaintiff alleges that defendants violated this section by not providing him with this notice.  (Compl. ¶ 41.)  Because plaintiff was hired prior to the date that this section became effective he was not entitled to receive such a notice "at the time of hiring."  See Gonsalez v. Martin, No. 12 CV 1157, 2014 WL 2514704, at *7 (E.D.N.Y. Apr. 25, 2013), adopted by 2014 WL 2526918 (E.D.N.Y. June 4, 2014); Guan Ming Lin v. Benihana N.Y. Corp., No. 10–CV–1335 (RA)(JCF), 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012), adopted by, Guan Ming Lin v. Benihana N.Y. Corp., 2013 WL 829098 (S.D.N.Y. Feb.

---

[5] This statute was changed, effective December 29, 2014, to only require such a notice at the time of hiring. However, I have applied the version of the statute that was in effect during plaintiff's employment.  See Galicia v. 63–68 Diner Corp., No. 13 CV 3689, 2015 WL 1469279, at *8 n.14 (E.D.N.Y. Mar. 30, 2015).

27, 2013). Plaintiff was, however, entitled to receive such a notice "on or before February first of each subsequent year of the employee's employment with the employer." N.Y. LAB. LAW § 195(1)(a). It is undisputed that defendants did not provide plaintiff with any such notices. Accordingly, plaintiff has established that defendants violated NYLL § 195(1)(a).

Also effective April 9, 2011, the NYLL requires that all employers "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y. LAB. LAW § 195(3). During the time the statute was effective, plaintiff was paid in cash for his hours worked. (Compl. ¶ 36.)

Plaintiff has submitted copies of paystubs defendants issued to him. (See Declaration of Zhi Yong Zheng, dated May 23, 2016 ("Zheng Decl."), Dkt. No. 21-1, Ex. 1.) While these paystubs include most of the information required by statute, they fail to accurately reflect plaintiff's rate of pay and tip allowance. It is undisputed that plaintiff was paid a $5.00 hourly wage throughout the course of his employment at Nanatori, and defendants admit that they did not track the tips he received. Yet, plaintiff was given paystubs showing that he was paid $7.50 per hour. In addition, the paystubs purport to reflect plaintiff's tips; however, they do not identify "allowances, if any, claimed as part of the minimum wage," such as the tip allowance. N.Y. LAB. LAW § 195(3). Defendants concede that they did not provide plaintiff with either wage notices or accurate paystubs. (Defs.' 56.1 Stmt. ¶¶ 22, 28.) Plaintiff therefore has established that defendants violated NYLL §§ 195(1)(A) and 195(3).

6. Spread-of-Hours Premium

11

Under the regulations implementing the NYLL, a restaurant employee is entitled to an additional hour of pay at the minimum hourly rate "[o]n each day on which the spread of hours exceeds [ten]." 12 N.Y.C.R.R. § 146–1.6(a) (effective Jan. 1, 2011); 12 N.Y.C.R.R. § 137–1.7 (repealed effective Jan. 1, 2011). The term "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday . . . includ[ing] working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 146–1.6 (effective Jan. 1, 2011); accord 12 N.Y.C.R.R. § 137–3.11 (repealed effective Jan. 1, 2011).

Plaintiff has submitted a declaration to support his claim to spread-of-hours damages. (See Zheng Decl. ¶¶ 9-11 (stating that "[f]rom Monday to Thursday, I generally worked 11:00 a.m. to 10:30 p.m. On Fridays I usually worked an extra hour at the end of my day, from 11:00 a.m. to 11:30 p.m. On Saturdays, I started later—12:30 p.m.—and worked until 11:30 p.m.") Defendants dispute plaintiff's assertion that he worked shifts that lasted longer than ten hours between commencement and termination. Defendants point to Liu's testimony that she knew and kept track of plaintiff's work schedule, and that his shifts did not last longer than ten hours, and argue that plaintiff is thereby not entitled to spread-of-hours pay. (See Defs.' 56.1 Stmt. ¶ 26 ("Zhi Yong Zheng's schedule was Monday to Friday for eight hours a day. Zhi Yong Zheng may have worked six days a week on occasion.") (citing Liu Dep. at 40-41); id. ¶ 22 ("Zhi Yong Zheng's schedule was Monday to Friday for eight hours a day.") (citing Liu Dep. at 40.)) This presents a material issue of fact that cannot be resolved on a motion for summary judgment. Therefore, I respectfully recommend that plaintiff's motion for summary judgment be denied as to liability on his spread-of-hours claim.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion for partial summary judgment be granted as to defendants' liability on his minimum wage, overtime, and Wage Theft Prevention Act claims. I further recommend that plaintiff's motion be denied with respect to his claim for spread-of-hours premiums.[6]  Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Dearie and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1)(C)(2009); FED. R. CIV. P. 72, 6(a).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       January 9, 2017

---

[6] I note that plaintiff has not amended his complaint to allege facts pertaining to the John Doe defendants.  Accordingly, the complaint must be dismissed as to the unnamed defendants for failure to state a claim upon which relief can be granted.